**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LINDA ANNORENO and REBECCA PEREZ, individually and on behalf of all other persons similarly situated, as Class/Collective representatives,** | ) ) ) ) | **Case No.:** 1:14-CV-7744 |
| | ) | |
| **Plaintiffs,** | ) | **Hon. Judge:**_____ |
| | ) | |
| **v.** | ) | **Magistrate Judge:**_____ |
| | ) | |
| **CLAIRE'S STORES, INC., and CLAIRE'S BOUTIQUES, INC.,** | ) ) | **Jury Trial Demanded On All Counts** |
| | ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, LINDA ANNORENO (hereinafter referred to as "Plaintiff Annoreno") and REBECCA PEREZ (hereinafter referred to as "Plaintiff Perez")(hereinafter collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel of record, upon personal knowledge as to those allegations in which they possess such and upon information and belief as to all other matters, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, and other state wage laws, bring these causes of action against Defendants, CLAIRE'S STORES, INC., and CLAIRE'S BOUTIQUE, INC. (hereinafter collectively referred to as "Claire's" or "Defendants"), and in so doing, state the following:

## I.      INTRODUCTION

1.      This is an individual, Class and Collective Action brought to remedy widespread violations by Defendants, Claire's, which have deprived Plaintiffs, non-salaried, "Sales Associate", hourly rate employees (hereinafter "Sales Associates"), along with other similarly situated individuals, of minimum wages, wages and overtime compensation to which they are entitled.

2.      Defendants' willful, knowing and/or reckless action of requiring Plaintiffs' and all other similarly situated Sales Associates of undergoing unpaid, post-shift "Night Shops" *after* they are "clocked-out," and also requiring Sales Associates to make unpaid "Bank Runs," therefore denying them of wages, minimum wages and overtime compensation, is in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*(hereinafter the "FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* (hereinafter the "IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* (hereinafter the "IWPCA") and the statutory laws of other states, including Alabama, Arizona, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Iowa, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, West Virginia, and Wisconsin (hereinafter referred to as "other state wage laws").

3.      A Night Shop is a policy and practice of Defendants, where Defendants' management employees secretly watch Sales Associates for approximately thirty (30) to forty-five (45) minutes, from outside the store and prior to the close of their shift. After the Sales

2

Associate clocks-out after their shift, sets the alarm, closes and locks the door, and crosses the store boundary (to be physically out of the store), Defendants' management employee then: (1) approaches the Sales Associate to announce that they are going to have a Night Shop; (2) requires the Sales Associate to unlock the door; (3) requires the Sales Associate to disarm the security system; (4) requires the Sales Associate to walk to the registers and verify that each register has the appropriate money left in the register and that the rest was in the bank deposit; (5) requires Sales Associate to check the bank log; (6) requires the Sales Associate to review and check to make sure that all closing duties (including: vacuuming, cleaning, dusting, mopping, garbage, merchandise and store straightening, proper completion of all paperwork and closing procedures, amongst others) were done fully and accurately; (7) requires the Sales Associate to wait while the management employee completes their paperwork regarding the Night Shop; (8) requires the Sales Associates to wait while the management employee calls their District Manager to verify that they performed the Night Shop appropriately; (9) requires the Sales Associate to then speak to the District Manager themselves to verify that they were properly subjected to the Night Shop; (10) requires the Sales Associate to undergo a security bag check, coat check and garbage check, to ensure that the Sales Associate did not steal any merchandise or have any contraband; and then (11) requires the Sales Associate to set the alarm, walk out together and lock the door. The Night Shop takes approximately thirty (30) to forty-five (45) minutes to perform. Plaintiffs' and Class/Collective members are not paid for their time worked during the Night Shop.

4.     Defendants' Bank Run policy required Sales Associates to make bank deposits at the close of their shift, after they are clocked-out, without compensating them for that time spent working, solely for the benefit of Defendants. A Bank Run takes approximately fifteen (15)

minutes. Upon information and belief, Defendanst changed the Bank Run policy in or around July 2014, and now adds fifteen (15) minutes of compensation to Sales Associates' paychecks for each bank deposit they make.

5. Under the FLSA, the IMWL and other state wage laws, there is a general rule that employees must be compensated at minimum wages and a rate of one-and-a-half (1½) times their regular rate of pay for all hours worked in excess forty (40) hours a week. 29 U.S.C. § 207; and 820 ILCS 105/4a. Despite these statutory requirements, Defendants requires, through its policies and practices, tens of thousands of Sales Associates to work off the clock, for the sole benefit of Defendants, by performing unpaid Night Shops and Bank Runs, which denies them wages, minimum wages and overtime wages in violation of the FLSA, the IMWL and other state wage laws.

6. Plaintiffs bring their FLSA claim on behalf of themselves and all other similarly situated current and former Sales Associates of Defendants, as a Collective Action pursuant to 29 U.S.C. § 216(b).

7. Plaintiffs bring their supplemental claims under the IMWL, IWPCA and other states' wage laws on behalf of themselves, individually, and a Class of all other similarly situated current and former Sales Associate employees of Defendants, as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

8. For at least ten (10) years prior to the filing of this Complaint, Defendants has willfully committed widespread violations of the FLSA, IMWL, IWPCA and other states' wage laws by not paying Sales Associates for Night Shops and Bank Runs, thereby denying them wages, minimum wages and overtime hours worked in excess of forty (40) hours per week at a

rate of one-and-one-half (1½) times their regular rate of pay and to pay them all wages in a timely manner.

9. Defendants' acts violate federal and state wage laws, affecting tens of thousands of its current and former Sales Associate employees. Accordingly, Plaintiffs, on behalf of themselves, and all others similarly situated, bring this action seeking equitable and declaratory relief, as well as nominal, compensatory, liquidated and punitive damages at law and other incidental monetary and non-monetary remedies necessary to make Plaintiffs and others similarly situated whole, as well as reasonable attorneys' fees and costs.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, 29 U.S.C. § 216(b). Plaintiffs do not bring any claims pursuant to or under a collective bargaining agreement.

11. The Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12. Upon information and belief, the amount in controversy in this matter exceeds the sum or value of five million dollars ($5,000,000.00), exclusive of interest and costs.

13. Upon information and belief, at least one member of the Rule 23 Class and/or Collective is a citizen of a state different than that of Defendants.

14. Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391. Defendants do business in the Northern District of Illinois, Eastern Division, and Plaintiffs are residents of the Northern District of Illinois, Eastern Division. Defendants are

subject to personal jurisdiction in the State of Illinois for the purpose of this lawsuit as Defendant is headquartered in Illinois.

### III.  PARTIES

15.     Representative Plaintiff Annoreno, resides in Elgin, Illinois and works at Claire's in Geneva, Illinois.  A written consent form for Plaintiff Annoreno, is attached to this Complaint as *Group Exhibit A*. Plaintiff Annoreno is a citizen of Illinois.

16.     Representative Plaintiff Perez, resides in Aurora, Illinois and works at Claire's in Geneva, Illinois. A written consent form for Plaintiff Perez, is attached to this Complaint as *Group Exhibit A*. Plaintiff Perez is a citizen of Illinois.

17.     Defendant Claire's Stores, Inc., is a publicly traded corporation, incorporated under the laws of Florida and with its corporate headquarters located in Illinois at 2400 West Central Road, Hoffman Estates, Illinois 60192. Defendant Claire's Stores Inc., serves customers nationwide and internationally, directly and through various divisions, wholly-owned subsidiaries and affiliates, however constituted. Defendant is authorized to do business, and is doing business, in the State of Illinois. Defendant Claire's Stores, Inc. is a citizen of Illinois.

18.     Defendant Claire's Boutiques, Inc., is a corporation incorporated under the laws of Colorado and authorized to do business in the state of Illinois. Defendant Claire's Boutiques, Inc., is a *wholly-owned and operated* subsidiary of Defendant Claire's Stores, Inc., and is similarly headquartered at Defendant Claire's Stores, Inc.'s headquarters at 2400 West Central Road, Hoffman Estates, Illinois 60192. Defendant Claire's Boutiques, Inc. is a citizen of Illinois. Defendant Claire's Boutiques, Inc. is one and the same, and wholly-controlled, owned and operated by Defendant Claire's Stores, Inc., therefore they are considered one and a single-entity

or joint employer under applicable state and federal wage law. They are collectively referred to hereinafter as "Claire's" or "Defendant."

19.    According to Defendant Claire's Stores, Inc.'s 2014 investor relations documents:

>   Claire's Stores, Inc. is one of the world's leading specialty retailers of fashionable jewelry and accessories for young women, teens, tweens and girls ages 3 to 35. The Company operates through its stores under two brand names: Claire's ® and Icing ®.  As of August 2, 2014, Claire's Stores, Inc. *operated 3,052 stores* in 17 countries throughout North America and Europe.

20.    Defendant Claire's Stores, Inc.'s policies, including its management policies, operational policies, human resources policies and wage and hour policies, are determined by corporate headquarters, in Illinois, and apply uniformly to all Claire's stores. Defendant Claire's Stores, Inc., is the employer of Plaintiffs and the Class/Collective, and/or Defendant Claire's Stores, Inc. is a joint or single employer with Defendant Claire's Boutiques, Inc., as it admittedly (through governmental filings and investor relation documents) "operates" its 3,052 stores.

21.    According to Defendant Claire's Stores, Inc.'s 2014 SEC 10K, as of February 1, 2014, it employed approximately 18,800 employees.

### IV.    CLASS AND COLLECTIVE ACTION ALLEGATIONS

### A.    THE IMWL AND OTHER STATE WAGE LAWS CLASS

22.    Plaintiffs brings claims under the IMWL, IWPCA and other state wage laws as an individual and as a Class Action pursuant to Federal Rules of Civil Procedure Rule 23. Under Rule 23 the Class is defined as:

>   All individuals who are currently or were formerly employed by Defendant in the United States as *Sales Associates*, and who have not been paid all wages owed to them, including but not limited to wages, minimum wages and overtime compensation, pursuant to

7

Defendant's Night Shop or Bank Run policy or practice, at any time from ten (10) years prior to the date of commencement of this action through the date of judgment in this action (the "Class" and "Class Period," respectively).

Excluded from the Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

23. **Numerosity:** The persons in the Class identified above are geographically diverse and so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants. Upon information and belief, there are thousands of members of the Class. Upon information and belief, Defendants currently owns and operates thousands of stores throughout the United States. Upon information and belief, there are between five (5) and ten (10) Sales Associates employees (at any point in time) at each of these locations.

24. **Commonality:** There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members. The questions of law and fact common to this Class predominate over any question solely affecting individual members of the Class, including, but are not limited to:

a. Whether Defendant Claire's Stores, Inc. and Defendant Claire's Boutiques, Inc. employed Plaintiffs and members of the Class or were joint or single employers, within the meaning of the IMWL, IWPCA and/or other state wage laws;

8

b.  Whether Defendants subjected Plaintiffs and members of the Class to a policy or practice of unpaid Night Shops;

c.  Whether Defendants subjected Plaintiffs and members of the Class to a policy or practice of unpaid Bank Runs;

d.  Whether Sales Associates are similarly situated for purposes of this lawsuit;

e.  Whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Class;

f.  Whether Defendants engaged in such a continuing policy, pattern or practice to allow or require Sales Associates to perform work in excess of forty (40) hours per week without compensating them at one-and-a-half (1½) times the regular rate of pay for all work performed in excess of forty (40) hours, and without paying them all wages and minimum wages owed;

g.  Whether Defendants knew or should have known that it failed to pay all wages, minimum wages and overtime compensation to Sales Associates;

h.  Whether Defendants intentionally, willfully and/or knowingly failed to pay Plaintiffs and Class members all wages, minimum wages and overtime compensation;

i.  Whether Defendants violated the IMWL, IWPCA and other state wage laws by refusing and/or failing to pay Plaintiff and members of the Class wages, minimum wages and overtime compensation;

j.      Whether Defendants' policy, pattern or practice of not paying Sales Associates all wages, minimum wages and overtime compensation was done willfully and/or with reckless disregard; and

k.      Whether Defendants failed to pay employees for all hours worked in compliance with the IMWL and IWPCA.

25.     **Typicality:** The claims of Plaintiffs are typical of the Class.

26.     **Adequacy:** Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs have no claims or interests that are antagonistic to the Class. Plaintiffs have retained Counsel that is experienced in litigating Class Action, Collective Action, wage and hour and employment matters.

27.     **Superiority:** A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individual employees/plaintiffs either lack the financial resources or cannot justify the commitment of the large financial resources necessary to vigorously prosecute separate lawsuits in Federal court and/or State court against large corporate defendants.

28.     Defendants have acted or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**B.      THE FLSA COLLECTIVE**

29.     Plaintiffs bring their FLSA claims, pursuant to Section 16(b) of the FLSA. 29 U.S.C. § 216(b).  Under Section 16(b) FLSA violation claims are brought and maintained as an "opt-in" Collective Action. *Id.*  Under Section 16(b), the FLSA Collective is defined as:

10

> All individuals who are currently or were former employed by
> Defendant in the United States, as *Sales Associates*, and who have
> not been paid all wages owed to them, including but not limited to
> wages, minimum wages and overtime compensation, pursuant to
> Defendant's policy or practice of unpaid Night Shops or Bank
> Runs, at any time from three (3) years prior to the date of
> commencement of this action through the date of judgment in this
> action (the "FLSA Collective" and "FLSA Collective Period,"
> respectively).

Excluded from the FLSA Collective are all employees and Sales Associates of Defendants who do not "opt-in" and Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the FLSA Collective period has had, a controlling interest in Defendants and the Judge to whom this case is assigned and any member of the Judge's immediate family.

30. Defendants have deliberately, willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as described above, by refusing and failing to pay Sales Associates for Night Shops and Bank Runs, for the sole benefit of Defendants, thereby failing and/or refusing to properly pay Plaintiffs and other similarly situated Sales Associates wages, minimum wages and overtime compensation in accordance with §§ 206 and 207 of the FLSA. Defendants knew or should have known that it failed to pay Sales Associates all wages, minimum wages and overtime compensation under the FLSA. Because Defendants willfully violated the FLSA, a three (3) year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

31. Plaintiffs and all other current and former Sales Associate employees are similarly situated in that they all are or were subject to Defendants' common policy, plan or practice of subjecting them to unpaid Night Shops and Bank Runs.

32.     Defendants are liable for improperly compensating Plaintiffs and members of the FLSA Collective under the FLSA, and as such, notice should be sent to the FLSA Collective. There are tens of thousands of similarly situated current and former Sales Associate employees of Defendants who have been denied wages, minimum wages and overtime compensation, as outlined above, in violation of the FLSA. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## V.     FACTS

33.     Plaintiff Annoreno has worked for Defendants at its Geneva, Illinois location since May 2012. Plaintiff Annoreno is currently employed by Defendants as an hourly, Sales Associate employee.

34.     Plaintiff Perez worked at Defendants' Aurora location from April 2012 to July 2012. From July 2012 to the present, Plaintiff Perez has worked at Defendants' Geneva, Illinois location. Plaintiff Perez is currently employed by Defendants as an hourly, Sales Associate employee. Plaintiff Perez worked at different locations and under different managers and experienced the same unpaid wage policies alleged herein at both locations.

35.     A Night Shop is a policy and practice of Defendants, where Defendants' management employees secretly watch Sales Associates for approximately thirty (30) to forty-five (45) minutes from outside the store, prior to the close of their shift. After the Sales Associate would clock-out for their shift, set the alarm, close and lock the door, and cross the store boundary to be physically out of the store, Defendants' management employee would: (1) approach the Sales Associate to discuss that they were going to have a Night Shop; (2) require

12

them to unlock the door; (3) disarm the security system; (4) walk to the registers; (5) verify that each register had the appropriate money left in the register and that the rest was in the bank deposit; (6) check the bank log; (7) check to make sure that all closing duties (including: vacuuming, cleaning, dusting, mopping, garbage, merchandise and store straightening, proper completion of all paperwork and closing procedures, amongst others) were done fully and accurately; (8) require the Sales Associate to wait while the management employee completes their paperwork regarding the Night Shop; (9) wait while the management employee calls their District Manager to verify that they performed the Night Shop; (10) speak to the District Manager themselves to verify that they were Night Shopped; (11) then undergo a security bag check, coat check and garbage check, to ensure that the Sales Associate did not steal any merchandise or have any contraband; and then (12) set the alarm, walk out together and lock the door.

36.     The Night Shop takes anywhere from thirty (30) to forty-five (45) minutes to perform. Plaintiffs' and Class/Collective members are not paid for their time worked being Night Shopped.

37.     Defendants' Bank Run policy required Sales Associates to make bank deposits at the close of their shift, after they are clocked-out, without compensating them for that time spent working, solely for the benefit of Defendants.  A Bank Run would take approximately fifteen (15) minutes. Upon information and belief, Defendants changed the Bank Run policy in or around July 2014, and now adds fifteen (15) minutes of compensation to Sales Associates' paychecks for each bank deposit they make.

38.     Defendants intentionally and knowingly fails and refuses to pay Sales Associates for Night Shops and Bank Runs, in order to limit the payroll budget and to make Bank Runs,

without receiving wages, minimum wages and/or overtime compensation for hours worked in excess of forty (40) per week.

39.     Defendants' violations are and continue to be willful and intentional in that they have known all along that federal and state wage and hour laws require them to pay Sales Associates for Night Shops and Bank Runs done for the sole benefit of Defendants and to pay them all wages, minimum wages and overtime compensation for this work.

40.     As a result of Defendants' willful violations of the FLSA, IMWL, IWPCA and other state wage laws, Plaintiffs and all other similarly situated Sales Associates have suffered damages in that they have not received proper wages, minimum wages and overtime compensation in accordance the FLSA, IMWL, IWPCA and other state wage laws.

## VI.     LEGAL CLAIMS

### COUNT ONE

### VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201 *et seq*. PLAINTIFFS, INDIVIDUALLY, AND ON BEHALF OF THE FLSA COLLECTIVE

41.     Plaintiffs, individually and on behalf of the FLSA Collective, re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

42.     At all relevant times, Plaintiffs and members of the FLSA Collective, were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

43.     At all relevant times, Defendants was an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA in 29 U.S.C. §§ 203(d), 206(a) and 207(a).

44.     At all relevant times, Plaintiffs and members of the FLSA Collective are employees within the meaning of the FLSA in 29 U.S.C. § 203(e) and 207(a).

45.     At all times relevant, Defendants employed Plaintiffs and members of the FLSA Collective as an employer and/or joint employer and/or single employer.

46.     Defendants engaged in a widespread pattern, policy and practice of violating the FLSA, as detailed in this Class Action Complaint.

47.     Defendants failed to keep accurate records of time worked by Plaintiffs and members of the FLSA Collective.

48.     Defendants did not make a good faith effort to comply with the FLSA in respect to compensating Plaintiffs and members of the FLSA Collective.

49.     Defendants' violations of the FLSA, as described in this Class Action Complaint, have and continue to be willful and intentional, thus applying a three (3) year statute of limitations to Defendants' violations, pursuant to 29 U.S.C. § 255.

50.     As a result of Defendants' willful and knowing violations of the FLSA, Plaintiffs and members of the FLSA Collective, who opt-in to this litigation, are entitled to recover wages, minimum wages and overtime compensation to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA, 29 U.S.C. §§ 201 *et seq*.

## COUNT TWO

## ILLINOIS AND OTHER STATE WAGE LAWS

51.     Plaintiffs, individually and on behalf of the Class, re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

15

52.     Illinois and other states have similar wage laws that require the payment of wages, minimum wages and overtime compensation.

53.     At all times herein set forth, Plaintiffs were "employees" within the definition of Illinois and other state wage laws. 820 ILCS 105/3(c); 820 ILCS 115/2.

54.     At all times herein set forth, Defendants were an "employer" within the definition of Illinois and other state wage laws. 820 ILCS 105/3(c); 820 ILCS 115/13.

55.     Illinois and other state wage laws require an employer, such as Defendants, to compensate employees for all wages, minimum wages and overtime compensation.

56.     Illinois and other state wage laws require an employer, such as Defendants, to compensate employees for all hours worked in excess of forty (40) hours per week, at a rate of one-and-a-half (1½)  times the employee's regular rate of pay, unless the employee is classified as exempt from receiving overtime compensation.

57.     During the Class Period, Plaintiffs and members of the Class did not fall under any of the exemptions provided by Illinois and/or other state wage laws. 820 ILCS 105/1 *et seq.*; 820 ILCS 115/1 *et seq.*

58.     Defendants willfully, intentionally and/or knowingly subjected Plaintiffs and members of the Class to unpaid Night Shops and Bank Runs.

59.     Plaintiffs and members of the Class were regularly denied wages, minimum wages and overtime compensation in violation of the IMWL and other state wage laws.

60.     Defendants' failure to comply with the IMWL and other state wage laws was reckless and/or willful.

61.     Based on the foregoing, Plaintiffs and members of the Class are entitled to recover all unpaid wages and overtime compensation, prejudgment interest, punitive damages,

attorneys' fees and costs pursuant to § 12(a) of the IMWL. 820 ILCS 105/12.

## COUNT THREE

## ILLINOIS WAGE PAYMENT AND COLLECTION ACT

62.     Plaintiffs, individually and on behalf of the Class, re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

63.     The IWPCA requires an employer, such as Defendants, to compensate employees for all hours worked. 820 ILCS 115/1 *et seq.*

64.     Defendants failed to keep accurate records of time worked by Plaintiffs and members of the Class.

65.     Defendants did not make a good faith effort to comply with the IWPCA with respect to compensating Plaintiffs and members of the Class for all wages due.

66.     Defendants intentionally and willfully failed and/or refused to pay Plaintiffs and members of the Class wages, minimum wages and overtime compensation by violating the FLSA, IMWL, IWPCA and other state wage laws, including but not limited to, refusing to pay them for Night Shops and Bank Runs, in order to avoid paying them wages, minimum wages and overtime compensation, at a rate of one-and-a-half (1½) times the employee's regular rate of pay, and by not paying Sales Associates all money due and owing in a timely manner.

67.     Defendants' failure to comply with the IWPCA was reckless and/or willful.

68.     Based on the foregoing, Plaintiffs and members of the Class are entitled to recover all unpaid wages, minimum wages and overtime compensation, prejudgment interest, statutory penalties, attorneys' fees and costs and all other available remedies pursuant the IWPCA. 820 ILCS 115/1 *et seq.*

## VII.    DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated Sales Associates, respectfully requests the following relief:

a.      Unpaid wages, minimum wages and overtime compensation under the FLSA, IMWL, IWPCA and other state wage laws;

b.      An additional and equal amount as liquidated and/or punitive damages under the FLSA, IMWL, IWPCA and other state wage laws;

c.      An order directing Defendants to supply the names, all known addresses, phone numbers and email addresses of all current and former similarly Sales Associates to Plaintiffs' counsel so that Plaintiffs may be allowed to send out notice of the Class Action and FLSA Collective Action, or that the Court issue such notice, to all persons who are presently, or have at any time during the past ten (10) years immediately preceding the filing of this lawsuit, been employed by Defendants as an Sales Associate.  Such notice shall inform them of that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied wages;

d.      Pre-judgment and post-judgment interest, as provided by law;

e.      Attorneys' fees and costs under the FLSA, IMWL, IWPCA and other state wage laws;

f.      The Plaintiffs be appointed as representatives of the Classes and Collectives;

g.      The Plaintiffs' counsel be appointed as Class Counsel;

     h.      Appropriate equitable and injunctive relief including an order directing Defendants to discontinue its policy or practice of unpaid Night Shops and Bank Runs; and

     i.      Any and all other relief to which Plaintiffs may be entitled to at law or in equity.

## VIII.   JURY DEMAND

Plaintiffs demand a trial by jury by all issues so triable.

Dated: <u>October 3, 2014</u>             Respectfully submitted,

                                        FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

                                        <u>/s/Kathleen C. Chavez</u>
                                        Robert M. Foote, Esq. (#03124325)
                                        Kathleen C. Chavez, Esq. (#06255735)
                                        Peter L. Currie, Esq. (#06281711)
                                        FOOTE, MEILKE, CHAVEZ & O'NEIL, LLC
                                        10 West State Street
                                        Suite #200
                                        Geneva, IL 60134
                                        Telephone: (630) 232-7450
                                        Facsimile:  (630) 232-7452

## VERIFICATION

I, **LINDA ANNORENO**, being first duly sworn on oath hereby state that I am the Plaintiff in this action, that I have read the forgoing Complaint, and that the allegations contained herein are true and accurate to the best of my knowledge and belief.

Respectfully submitted.

**LINDA ANNORENO**

Subscribed and sworn to before me
this ___1___ day of ___october___, 2014.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
LIZETH ESQUIVEL
Notary Public, State of Illinois
My Commission Expires 04/26/15

## VERIFICATION

I, **REBECCA PEREZ**, being first duly sworn on oath hereby state that I am the Plaintiff in this action, that I have read the forgoing Complaint, and that the allegations contained herein are true and accurate to the best of my knowledge and belief.

Respectfully submitted.

**REBECCA PEREZ**

Rebecca a. Perez

Subscribed and sworn to before me
this ____ day of ___October___, 2014.

NOTARY PUBLIC

"OFFICIAL SEAL"
LIZETH ESQUIVEL
Notary Public, State of Illinois
My Commission Expires 04/26/15