**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LINDA ANNORENO, et al., **Plaintiff,** vs. CLAIRE'S STORES, INC., et al., **Defendant.** | No. 14 cv 07744 Honorable John Z. Lee |

**PLAINTIFFS' SUPPLEMENTAL MEMORDANDUM IN SUPPORT OF THEIR MOTION TO CERTIFY THE COLLECTIVE, ALLOCATE AND DISTRIBUTE GROSS BANKRUPTCY FUNDS TO PLAINTIFFS**

Representative Plaintiffs, Linda Annoreno and Rebecca Perez, on their own behalf and for the benefit of the collective, (hereinafter referred to collectively as the "Collective" or "Plaintiffs"), by and through their attorneys of record, Kathleen C. Chavez and Elizabeth C. Chavez of Foote, Mielke, Chavez & O'Neil, LLC., and in response to the Court's January 28, 2020 Order (ECF Dkt. #148) requesting a supplemental memorandum in support of certifying the Collective and in support of Plaintiffs' proposed method of allocation and distribution of certain bankruptcy settlement funds paid from Claire's bankruptcy, *In re: Claire's Stores, Inc., et. al.*, Case No. 18-10583 ("Bankruptcy Court") to Plaintiffs in resolution of this Litigation ("Gross Bankruptcy Fund"), Plaintiffs state as follows:

**FACTUAL BACKGROUND**

On or around October 3, 2014, Linda Annoreno and Rebecca Perez filed a complaint in the United States District Court for the Northern District of Illinois on behalf of themselves and other similarly situated individuals alleging that Claire's violated the Fair Labor Standards Act, 29

1

U.S.C. § 201, et seq., the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq., the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq., and other various state wage and hour laws (referred to hereafter collectively as "FLSA Claims") by failing to pay its hourly sales associates for all time worked. (ECF Dkt. #1) On or around June 18, 2015, the Court granted in part Plaintiffs' Motion for Preliminary Conditional Certification and ordered Notice and an opportunity to participate in this Litigation be mailed to current and former Claire's Sales Associates residing in the states of Illinois, Indiana, and Wisconsin that had worked for Claire's during the time period June 18, 2012, through the present. (ECF Dkt. #30). On or around November 17, 2015, the Court ordered nationwide Notice and an opportunity to participate in this Litigation be mailed to current and former Claire's Sales Associates. (ECF Dkt. #62). As a result of the Court ordered notices, 2,434[1] individuals consented to inclusion in this Litigation as Plaintiffs, for the relevant time period of June 18, 2012 through July 18, 2014. On or around March 2018, Defendants filed Notice of Bankruptcy Filing and Imposition of Automatic Stay Pursuant to Section 362(a) of the Bankruptcy Code. (ECF Dkt. #135).

    1.    Upon receiving a notice of filing from the Bankruptcy Court, the representative Plaintiffs filed a timely claim in the bankruptcy court on behalf of themselves and all others similarly situated. Plaintiffs' received the Gross Bankruptcy Fund, in the amount of three hundred and eighty thousand dollars ($380,000.00) from the Bankruptcy Court, and subsequently filed a motion seeking this Court's approval to allocate and distribute the Gross Bankruptcy Fund. On or around January 28, 2020, this Court requested a supplemental memorandum in support of certification of the collective for purpose of distributing the Gross Bankruptcy Fund. (ECF Dkt. #148). Before the Court are unique circumstances and novel legal issues involving approval of an

---

[1] After further review of the data, a number of duplicate opt-in forms were discovered. An analysis of the data revealed a total of approximately 2,406 plaintiffs.

allocation and distribution methodology for a bankruptcy distribution made to Plaintiffs in this collective FLSA Litigation. Most significantly, in approving an FLSA collective, courts must typically decide whether the total value of the proposed settlement is appropriate and meets the FLSA standard of "fair, just and reasonable." Here, the total value of the settlement has already been determined by the Bankruptcy Court; therefore, the key inquiry for this Court is to ensure the approval of an allocation and distribution methodology for the gross settlement distribution already determined by the Bankruptcy Court.

### ARGUMENT AND INCORPORATED SUPPLEMENTAL INFORMATION REGARDNG PLAINTIFFS' PROPOSED DISTRIBUTION METHOD

Plaintiffs contend that this Court should enter an Order approving their Motion to Certify the Collective, Allocate and Distribute Gross Bankruptcy Funds, as Plaintiffs have successfully met their burden in certifying the collective. The FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b) (2006)). Certification of the Collective for purposes of settlement and distribution of settlement funds is appropriate in this case, where the Litigation was resolved in bankruptcy.

The Seventh Circuit has not established criteria for determining whether employees are "similarly situated" for purposes of the FLSA, but the majority of courts...have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012) (citation and internal quotation marks omitted) (omission in original). Step one involves a conditional certification, and step two, a final certification. Plaintiffs' burden increases with each, directly proportional to discovery progress." *Vazquez v. Ferrara Candy Co.*, No. 14 C 4233, 2016

WL 4417071, at *3 (N.D. Ill. Aug. 19, 2016), citing *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-CV-10447, 2016 WL 1043429, at *1 (N.D. Ill. Mar. 16, 2016).

At the first stage, a named plaintiff "can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Camilotes*, 286 F.R.D. 339, at 345. Accordingly, at the conditional certification phase, a court requires only a "modest factual showing" that the potential plaintiffs are similarly situated, given that minimal discovery has taken place. *Vazquez*, No. 14 C 4233, 2016 WL 4417071, at 3. Here, the Court entered an order preliminarily conditionally certifying the proposed collective in or around June 2015. (ECF Dkt #30). Thereafter, the Court entered an Order Conditionally Certifying the Collective and Ordering Notice be sent to the nationwide collective. (ECF Dkt. #62). The parties engaged in discovery, including written discovery and numerous depositions.

At the second stage, after the court conditionally certifies the collective, Defendant typically files a motion to decertify the collective. At the second stage of the collective action certification analysis, "[t]he Court must consider: (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Vazquez*, No. 14 C 4233, 2016 WL 4417071, at 3. These factors help a court determine whether it can manage the case and bring about a fair and reasonably expeditious resolution of the collective action. *Id*. Here, Defendants did not file a motion to decertify the collective. Rather, Defendant filed bankruptcy and an automatic stay of proceedings was entered. (ECF Dkt. #135). Plaintiffs filed a claim in the bankruptcy court, and received a distribution in or around November 2019. As a result of the distribution, Plaintiffs have worked towards

4

effectuating the settlement distributions and have filed a Motion Certify the Collective, Allocate and Distribute Gross Bankruptcy Funds to Plaintiffs. Plaintiffs aver that because they met the "stage one" burden of the collective action certification process, which resulted in this court conditionally certifying a nationwide collective, and because Defendant did not file a motion to decertify the collective, this Court should grant Plaintiffs' Motion Certify the Collective, Allocate and Distribute Gross Bankruptcy Funds to Plaintiffs.

In the traditional sense, Court approval of FLSA settlements—consistent with the Eleventh Circuit's holding in *Lynn's Food Stores*—is the norm across most circuits, including the Seventh. *Adams v. Walgreen Co.*, No. 14-CV-1208-JPS, 2015 WL 4067752 (E.D. Wis. July 2, 2015), *See also, Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350 (11th Cir. 1982). Stipulated settlements in a Fair Labor Standards Act (FLSA) case must be approved by the court. *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990 (N.D. Ind. 2010). To determine fairness of a settlement under Fair Labor Standards Act (FLSA), court must consider whether agreement reflects reasonable compromise of disputed issues rather than mere waiver of statutory rights brought about by an employer's overreaching. *Id*. When reviewing a Fair Labor Standards Act (FLSA) class action settlement, a court normally considers the following factors: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the

5

risks of litigation. *Id.* at 995. In determining whether to approve a settlement, a court must consider whether it is fair, just and reasonable.

Unlike a traditional, negotiated settlement in an FLSA collective action, the present action was discharged as a result of Bankruptcy. As such, Plaintiffs contend that the Court is not bound by the 7th Circuit's stringent settlement approval standards requiring approval of the total amount of the settlement payment. Since the Bankruptcy Court distributed the total amount of the Gross Bankruptcy Fund, this Court need only determine whether the allocation and distribution methods proposed by Plaintiffs are fair, just and reasonable.

Plaintiffs' Motion Certify the Collective, Allocate and Distribute Gross Bankruptcy Funds to Plaintiffs articulates a proposed allocation methodology inclusive of service payments, a request for attorneys' fees and costs and a proposed "Notice of Bankruptcy Payment" form to be included with the distribution check.[2] On or around October 12, 2018, the Bankruptcy Court entered an Order Confirming the Third Amended Joint Chapter 11 Plan of Reorganization of Claire's Stores, Inc. and its Debtor Affiliates. See *In re: Claire's Stores, Inc., et. al.*, Case No. 18-10583, [Docket No. 1034]. Plaintiffs' received a notice of the Order from the Bankruptcy Court, as Plaintiffs previously filed a timely claim. As a result, Plaintiffs' wage claims were discharged and the collective received a distribution. The discharge is a permanent order prohibiting the creditors of the debtor from taking any form of collection action on discharged debts, including legal action and communications with the debtor, such as telephone calls, letters, and personal contacts.

---

[2] The parties jointly submit *Exhibit A*, which is an amended "notice" form that was attached as "Exhibit B" (ECF Dkt. #147-2) to Plaintiffs' Motion to Approve Distribution of Bankruptcy Funds and Proposed Distribution Method (ECF DKt. #147).

6

In an effort to maximize the distribution to the collective members, Plaintiffs' counsel obtained a tax opinion, from a tax attorney, on the necessity of allocating the distributions as "non-wages." The Opinion rendered articulated, in part:

*"Even in a situation where the Defendant filed for bankruptcy before any formal Settlement Agreement could be created and the claims were discharged through the bankruptcy proceedings, the origin and nature of the claims test, which was applied by the U.S. Supreme Court in Hort v. Commissioner, 313 U.S. 28 (1941), and later articulated in United States v. Gilmore, 372 U.S. 39 (1963), continues to play a crucial role in determining the tax treatment of the payments that the Opt-In Plaintiffs will receive. Whether a payment is taxable and subject to employment and income tax withholding depends on the nature of the claims that was the actual basis of the settlement, or in this case the basis of the bankruptcy discharge. The origin of the claim doctrine treats an amount received in satisfaction of a claim as a substitute for the item of loss or economic detriment alleged in the claim, assigning it the same tax treatment that the lost item would have received. Thus, when claims that arose out of the employment relationship are settled or discharged, the IRS will consider such payment to be wages unless there is an express allocation to excludable or non-wage income (i.e., payment for personal physical injury is excludable from income and payment for emotional distress is treated as non-wage income). This wage treatment applies even if the employment relationship no longer exists at the time the payment is made. If there is no allocation to non-wage income and the origin of the claim indicates that the payment is for loss of pay, then the amount should be characterized as wages. . . The payments to the Opt-In Plaintiffs should not be treated as non-wage payments simply because the matter is a bankruptcy matter at this point and all claims were discharged through the bankruptcy proceedings. In determining the tax treatment of the payments, what matters is the origin and nature of the original claims, which in this case would be the Class Action Complaint."*

Based on the Opinion above, Plaintiffs' counsel has been working with the Claims Administrator to effectuate a settlement distribution that maximizes the allocations to the collective, but is also inclusive of both Employer and Employee wage deductions. Defendants are not in a position to produce any additional information or data to effectuate this proposed distribution. In their proposed distribution methodology, Plaintiffs have articulated that the entire collective should be taxed based on Illinois wage withholding requirements. Approximately 788 opt-in Plaintiffs have been identified, and in an effort to effectuate this proposed distribution, Plaintiffs believe that using Illinois wage deductions for the entire collective is most efficient and effective, as Defendant is headquartered in Illinois. Using applicable Federal and Illinois state

wage withholdings, Plaintiffs anticipate that approximately $21,602.59, must be factored into the net settlement fund to account for the Employer tax obligations.

Service awards are routinely awarded in FLSA Collective action cases and are appropriate for the following two named- Plaintiffs and three Opt-In Plaintiffs: Linda Annoreno, Rebecca Perez, Jane Marie Collins, Carolina Ballines and Allison Cleary. See *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (E.D.N.Y.,2012). Courts typically consider the time and actions the plaintiffs take to protect the interests of the Collective and the degree to which the efforts were beneficial to the Collective. *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

Here, the two named Plaintiffs not only provided invaluable contributions by initiating the litigation, providing important facts and information regarding the claims asserted in the Litigation, assisting with discovery, giving deposition testimony and taking on the risk incurred by becoming a named-plaintiff and assisting the prosecution of the Litigation, but also continued to protect and pursue the interests of the Collective upon Claire's filing of bankruptcy. But for named-Plaintiffs filing and pursuit of the Collective's claims in bankruptcy, the Gross Bankruptcy Fund would not even exist. Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See Id.*

The two-named Plaintiffs are only seeking payment in the amount of $1,500.00 each. Substantially more is routinely awarded to representative plaintiffs in similar matters. See *Toure v. Amerigroup Corp.,* No. 10 Civ. 5391, 2012 WL 3240461, at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); *Sewell,* 2012 WL 1320124, at *14–15 (finding

reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); *Reyes,* 2011 WL 4599822, at *9 (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); *Willix,* 2011 WL 754862, at *7 (approving service awards of $30,000, $15,000, and $7,500); *Torres,* 2010 WL 5507892, at *8 (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action). Similarly, three Opt-In Plaintiffs provided valuable assistance during discovery and provided deposition testimony. Their assistance with discovery provided valuable information during the prosecution of the claims. Plaintiffs are requesting that each of the 3 Opt-In Plaintiffs that provided deposition testimony be compensated in the amount of $300.00 each.

With respect to attorney's fees, Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgement awarded to plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. §216(b). The FLSA mandates that courts award a "reasonable attorney's fee" to prevailing plaintiffs. *See* 29 U.S.C. § 216(b) ("The court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999). A counsel fee of 33.3% of the common fund is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers in an FLSA collective action. *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990 (N.D. Ind. 2010). Courts have also considered the amount of risk, "with no ultimate guarantee of compensation" that was incurred by Collective Counsel, the value of advanced time and efforts, and the amount of advanced costs and expenses. Id. at 8. Courts further consider the time advanced to date and also the additional time required in the future

9

to administer the settlement going forward. *Parker v. Jekyll & Hyde Entm't Holdings, LLC,* No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).

The 7th Circuit has repeatedly held that " when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (C.A.7 (Ill.),2001) citing, *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir.2000); *Gaskill v. Gordon,* 160 F.3d 361 (7th Cir.1998); *Florin v. Nationsbank of Georgia, N.A.,* 60 F.3d 1245 (7th Cir.1995) *(Florin II)*; *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560 (7th Cir.1994) *(Florin I)*; *In re Continental Illinois Securities Litigation,* 985 F.2d 867 (7th Cir.1993) *(Continental II)*; *In re Continental Illinois Securities Litigation,* 962 F.2d 566 (7th Cir.1992) *(Continental I)*.

Here, Plaintiffs' counsel is seeking a total of $90,743.17 in attorneys' fees for legal services and $83,356.83 in costs advanced over the course of this Litigation. The total amount of fees and costs requested is $174,100.00. As stated in Plaintiffs' Motion to Allocate and Distribute Gross Bankruptcy Settlement Funds to Plaintiffs, Plaintiffs' counsel offers that to date, they have advanced approximately $52,363.83 in costs associated with this Litigation and the additional costs of administering the allocation and distribution of the fund is $30,993.00. *See Exhibit A of Plaintiffs' Motion Certify the Collective, Allocate and Distribute Gross Bankruptcy Funds to Plaintiffs*. Since the initiation of this Case in 2014, Plaintiffs' counsel has expended and advanced over $250,000.00 in attorney time and professional support staff time ("Fees for Legal Services"). Plaintiffs' counsel is requesting less than 40% of the Fees for Legal Services it has advanced, in an amount equal to $90,743.17 in attorneys' fees. Said amount is representative of approximately 25% of the Gross Bankruptcy Settlement Fund and about 38% of counsels' loadstar. Plaintiffs'

counsel has expended significant time and financial resources, which far exceeds the request for fees and costs. Defendants do not object to the request for attorneys' fees and costs. This Court should approve Plaintiffs' counsels' request for attorneys' fees and costs.

## **CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that this honorable Court enter an Order (1) Certifying the Collective; (2) Appointing Foote, Mielke, Chavez & O'Neil, LLC as Collective Counsel; (3) Appointing Angeion Group as the Claims Administrator responsible for Administering the Claim; and (4) Approving Plaintiffs' Motion Certify the Collective, Allocate and Distribute Gross Bankruptcy Funds to Plaintiffs.

Dated: February 21, 2020          Respectfully submitted,

**LINDA ANNORENO, et al.,**

**FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**

/s/Elizabeth Chavez
Elizabeth C. Chavez (#6323726)
Kathleen C. Chavez (#6255735)
Foote, Mielke, Chavez & O'Neil, LLC
10 West State Street
Suite 200
Geneva, IL 60134
630.232.7450
Emails: ecc@fmcolaw.com
             kcc@fmcolaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on February 21, 2020, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

                /s/Elizabeth C. Chavez